## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Charles Seabrook, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Civil Action No. 1:15-1308-RMG |
| | ) |
| Carolyn W. Colvin, Acting Commissioner | ) |
| of Social Security, | )    **ORDER** |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking

judicial review of the final decision of the Commissioner of Social Security denying his claim for

Disability Insurance Income ("DIB") and Supplemental Security Income ("SSI"). In accord with

28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States

Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and

Recommendation ("R & R") on March 9, recommending that the Commissioner's decision be

reversed and remanded. (Dkt. No. 18). The Commissioner filed a response indicating that she

did not intend to file objections to the R & R. (Dkt. No. 21). For reasons set forth below, the

Court adopts the R & R, in part, as the order of this Court, as further supplemented and

elucidated by this opinion; reverses the decision of the Commissioner; and remands the matter to

the agency for further action consistent with this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to

Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work . . . ." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ." SSR 96-8p, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996). Where a claimant has multiple mental and/or physical impairments, the Commissioner must consider the combined effect of those multiple impairments on the claimant's ability to meet the requirements of work. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

If it is determined that the claimant cannot return to his prior work, the burden shifts to the Commissioner to establish whether the claimant can perform other work that exists in the national economy. *Walker*, 889 F.2d at 50. To the extent that the claimant's impairments involve both exertional and nonexertional impairments, the Commissioner is obligated to rely upon a vocational expert to establish that the claimant retains the ability to perform specific jobs in the national economy. *Id.* Such opinions by vocational experts are normally offered in response to a hypothetical or a series of hypothetical questions. It is essential that the vocational expert's opinions be based on consideration of all of the evidence in the record and that the hypothetical questions set out all of the claimant's impairments. *Id.* at 50–51.

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship,

-4-

length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, since the Commissioner recognizes that the non-examining expert has "no treating or examining relationship" with the claimant, she pledges to consider their supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." 20 C.F.R. § 404.1527(c)(3).

Social Security rules and regulations recognize that chronic pain may not necessarily be provable by objective diagnostic studies and that the subjective complaints of a claimant should be given fair consideration in making a determination of disability. 20 C.F.R. § 404.1529; SSR 96-7P, 1996 WL 374186 (1996). The Administrative Law Judge, when evaluating a claimant's complaints of chronic pain, is directed to consider such factors as the claimant's daily activities, location, frequency and intensity of the claimant's pain symptoms, any precipitating or aggravating factors, the effectiveness of any pain medications, and treatment received. § 404.1529(c)(3)(i)-(vii). Where there is conflicting evidence regarding the claimant's degree of impairment, the Commissioner, as the fact finder, must weigh and reconcile that evidence, and any factual findings of the agency are subject to substantial evidence review on appeal to the District Court.

## Discussion

Plaintiff, who suffers from a variety of severe physical impairments, including degenerative disc disease, diabetes mellitus, headaches, obesity, and irritable bowel syndrome, asserts that this combination of impairments renders him disabled under the Social Security Act, with an onset date of February 19, 2011. The Commissioner, while recognizing that Plaintiff does suffer from these various severe physical impairments, nonetheless determined that Plaintiff retains the residual functional capacity for sedentary work. Tr. 12–21. Plaintiff has appealed the denial of Social Security disability benefits to this Court, arguing that decision of the Commissioner should be reversed because (1) the Administrative Law Judge's ("ALJ") failure to develop the record; (2) the failure to adhere to the Treating Physician Rule; (3) the failure to consider the combined effects of the Plaintiff's multiple physical impairments; and (4) failure to consider Plaintiff's subjective complaints relating to his irritable bowel syndrome. The Magistrate Judge issued an R & R on March 9, 2016, recommending that the decision of the Commissioner be reversed because of the failure to consider fully the combined effects of Plaintiff's severe impairments and the Plaintiff's subjective complaints concerning complications of his irritable bowel syndrome. (Dkt. No. 18 at 31–37). The Magistrate Judge further recommended that the Court deny relief on Plaintiff's objections regarding the failure of the ALJ to fully develop the record and the ALJ's evaluation of the opinions of Plaintiff's treating internal medicine physician, Dr. Douglas Gleaton. (*Id.* at 21–30).

A.    Failure to Consider the Combined Effects of Plaintiff's Severe Medical Impairments

The Magistrate Judge carefully analyzed the record in this matter and the decision of the ALJ concerning whether the Commissioner adequately consider the combined effects of Plaintiff's gastrointestinal ("GI") symptoms and diabetes.  The Magistrate Judge concluded that "the ALJ failed to adequately consider the combined effects of Plaintiff's GI impairments and diabetes" and recommended reversal of the Commissioner's decision on this ground.  (Dkt. No. 18 at 33–34).  The Commissioner has filed no objection to this recommendation. (Dkt. No. 21). After a careful review of the record, the decision of the ALJ and the R & R, the Court finds that the Magistrate Judge ably addressed the factual and legal issues and correctly concluded that reversal in appropriate to allow the Commissioner on remand to consider the combined effects of Plaintiff's severe impairments, including the combined effect of his diabetes and GI symptoms. Thus, the Court adopts that portion of the R & R relating to the combined effect of impairments (Section II(B)(3), pages 31–34) as the order of the Court and reverses the Commissioner's decision on this issue.

B.    Failure to Consider Plaintiff's Subjective Complaints

The Magistrate Judge analyzed the record concerning Plaintiff's subjective complaints concerning frequent bathroom use caused by his irritable bowel syndrome and concluded that there is not substantial evidence in the record to support the ALJ's decision to discount Plaintiff's credibility on this issue.  The Magistrate Judge recommended the Court reverse the Commissioner's decision on this issue. (Dkt. No. 18 at 34–37).  The Commissioner filed no objection to this recommendation. (Dkt. No. 21).  Again, after a full review of the record, the

order of the ALJ and the R & R, the Court finds that the Magistrate Judge ably analyzed the legal and factual issues and correctly concluded that the decision of the Commissioner should be reversed. The Court adopts the portion of the R & R relating to subjective complaints (Section II(B)(4), pages 34–37) as the order of the Court, and reverses the decision of the Commissioner on this issue.

C.      Duty to Develop the Record

The Magistrate Judge carefully analyzed the legal and factual issues surrounding the duty of the ALJ to develop the record in this matter and correctly concluded that as a matter of law no such duty exists in this circumstance. The Court adopts the portion of the R & R relating to the duty to develop the record (Section II(B)(1), pages 21–26) and denies Plaintiff's appeal on this issue.

D.      Treating Physician Rule

Plaintiff challenges the ALJ's decision to accord "little weight" to the opinions of his treating internal medicine physician, Dr. Gleaton, and the Court's review of the record finds considerable support for Plaintiff's concerns. The record contains consistent evidence that Plaintiff suffers from chronic and severe pain as a result of degenerative disc disease. An MRI of the lumbar spine, performed on April 7, 2010, was read by a board certified diagnostic radiologist, Dr. John Rand, to demonstrate the "desiccation of the intervertebral disc with a left foraminal and extraforaminal herniation, displacing the lateral left L3 nerve root." Tr. 397. Another MRI of the lumbar spine was performed on February 9, 2011, and was read by another board certified diagnostic radiologist, Dr. Forrest C. Ham, to demonstrate greater space narrowing at L3-4 since the April 2010 MRI and "[b]road-based extension of disc . . . impinging

-8-

upon the exiting left L3 nerve root." Tr. 371. Multiple examining and treating physicians documented Plaintiff's consistent complaints of severe back pain and radicular left leg pain. Tr. 393, 611, 627, 632, 658, 665, 668, 670, 706, 711, 724, 730. Although Plaintiff's routine office examinations demonstrated normal strength and other relatively benign findings, a more detailed physical assessment performed by a physical therapist at Bon Secours St. Francis Hospital on February 27, 2012 revealed significant abnormalities with flexion, extension, rotation and side-bending. These abnormalities were particularly severe on the left side. Tr. 687. Plaintiff was also noted not to be able to walk on his heels or toes and was unable to maintain balance with one leg. Tr. 688. The physical therapist set Plaintiff's goal "to be able to walk and function again." *Id.*

Plaintiff was seen by a neurosurgeon, Dr. Robert Stuart, to determine whether there was a surgical option available. Dr. Stuart carefully documented the patient's radiological findings, subjective complaints and physical examination, and found the Plaintiff's condition as "moderately complex." He noted the abnormality revealed by the MRI at L3, which he thought "could explain his left lower extremity radicular symptoms," but "unlikely to explain his back pain." In a later evaluation, Dr. Stuart concluded that "I am not convinced that surgery to remove the small disc fragment would result in any improvement in terms of his low back pain." Tr. 668.

Plaintiff was sent by Dr. Stuart to a pain management specialist, Dr. James Keffer, for epidural injections and physical therapy. Tr. 659. Plaintiff informed Dr. Keffer that he had no health insurance and could not afford the recommended therapy. Tr. 666, 671, 698. Indeed, Dr. Keffer documented that Plaintiff "has had some financial hardship issues which have interfered

-9-

with doing more physical therapy." Tr. 666.

The record demonstrates that Plaintiff was frequently seen in emergency rooms for treatment of his severe back pain, a common practice of the uninsured. Tr. 392–93, 622–23, 627, 632, 729. He also received care, primarily in the form of pain medications, from his internal medicine physician, Dr. Gleaton. No treating physician saw Plaintiff more during the relevant time period of this claim than Dr. Gleaton. Tr. 611, 706–07, 709–10, 711–12. Dr. Gleaton documented Plaintiff's "chronic lower back pain as a result of degenerative disc disease" in an office appointment on December 28, 2011, and noted that he had been unable to work because of his GI problems and "chronic pain." Tr. 611. Dr. Gleaton documented in an office note of March 21, 2013 that Plaintiff's condition appeared to be worsening and "he complains of a burning sensation in his feet that has extended up his legs and [is] now in his back." Tr. 706.

Much of the dispute regarding the treating physician issue centers on opinions provided by Dr. Gleaton in a questionnaire dated December 30, 2011. Dr. Gleaton opined that, due to Plaintiff's lumbar disc disease, he could not tolerate more than one to two hours of work in an eight-hour workday. Tr. 724. He further stated that Plaintiff could not work on a consistent and sustained basis eight hours per day, five days a week. *Id.* There is no question that if Dr. Gleaton's opinions are credited, Plaintiff would be disabled under the Social Security Act.

The ALJ determined that Dr. Gleaton's opinions would be given "little weight" because they are "unsupported by the weight of the evidence," which includes Dr. Gleaton's "own treatment records." He also concluded that he gave "no weight" to the opinions of a non-examining and non-treating physician, Dr. William Cain, who offered the opinion that Plaintiff was capable of sitting, standing and walking six hours in an eight hour day." Tr. 543. The only

-10-

other direct record evidence about Plaintiff's capacity to sustain work on a full time basis came

from the Plaintiff himself at the administrative hearing, where he testified that he could only sit

or stand for no more than 30 minutes at a time. Tr. 39. Plaintiff testified that he experienced

"constantly burning [pain] day and night," with "bad pains coming from my feet . . . up to my

leg" and "my back." Tr. 36. He described the pain as "just like somebody stabbing me with a

knife." Tr. 40.

In concluding that Plaintiff retained the capacity for sedentary work, the ALJ made much

of the fact that Dr. Stuart recommended only conservative treatment and that Plaintiff "did not

apparently undergo any additional epidural steroid injections or significant physical therapy." Tr.

18. The ALJ concluded that Plaintiff's condition must not have been that serious if Dr. Stuart

did not recommend surgery. However, the records of Dr. Stuart, and all the other treating

physicians, never doubted Plaintiff was suffering from severe and persistent pain. Tr. 611, 658,

665, 668, 671. As Dr. Stuart explained his decision to forgo surgery, he did not believe that

surgery would provide any relief for Plaintiff's severe back pain and was unwilling to perform

major surgery that only addressed the patient's left leg radicular pain symptoms. Tr. 668.

Further, contrary to the ALJ's findings, Dr. Gleaton's office records documented Plaintiff's

severe pain and that his condition interfered with his ability to work. Tr. 611, 706, 711.

The ALJ's reference to Plaintiff's limited use of physical therapy and steroid injections as

evidence that his condition was not that serious ignored well documented explanations in the

record regarding why these therapies were not continued by Plaintiff. Dr. Keffer, Plaintiff's

treating pain medicine specialist, repeatedly documented in the record that Plaintiff was unable to

continue physical therapy because he had no health insurance and could not afford the treatment.

-11-

Tr. 666, 671, 698. Plaintiff also confirmed in his testimony that his lack of insurance prevented him from continuing his physical therapy. Tr. 36–37. It is well settled that a claimant "may not be penalized for failing to seek treatment [he] cannot afford" because "it flies in the fact of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Lovejoy v. Heckler*, 790 F. 2d 1114, 1117 (4th Cir. 1986). Additionally, the ALJ overlooked references in the record that the steroid injections provided Plaintiff very little relief. Tr. 665, 668.

Based on the foregoing, the Court concludes that the ALJ's finding that Dr. Gleaton's opinions are "unsupported by the weight of evidence of record, including Dr. Gleaton's own treatment records," is not supported by substantial evidence. As referenced above, the records of treating physicians have documented Plaintiff's severe pain, and Dr. Gleaton's office notes support his opinions regarding Plaintiff's severe pain and impact on his ability to perform work. The Plaintiff's sworn testimony at the administrative hearing further supports Dr. Gleaton's opinions. The only conflicting evidence in the record regarding Plaintiff's capacity to sustain a regular work schedule comes from a non-examining and non-treating physician, Dr. Cain, whose opinions were given "no weight" by the ALJ. Tr. 17.

The decision of the Commissioner is reversed regarding the evaluation of the opinions of Plaintiff's treating physician, Dr. Gleaton. On remand, the Commissioner is directed to evaluate the opinions of Dr. Gleaton in accord with the standards of the Treating Physician Rule, providing appropriate weight to Dr. Gleaton's treatment history, examination history, the supportability of the opinions, and the other factors mandated under the Rule. 20 C.F.R. § 404.1527(c). The ALJ should also avoid on remand substituting her medical opinions for those

of the expert witnesses.

## Conclusion

Based upon the foregoing, the Court hereby **ADOPTS** Sections I, II(A), (B)(1), (3) and (4), pages 1-26, 31-37, of the R & R as the order of the Court, as further supplemented and elucidated by this order; **REVERSES** the decision of the Commissioner; and **REMANDS** the case to the agency for further action consistent with this order.[1]  In light of the fact that Plaintiff's application for disability benefits has been pending for more than four years, the Commissioner is directed to schedule rehearing on this matter and to render a decision by the ALJ within 120 days of this order.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

Charleston, South Carolina
March 24, 2016

---

[1]  The record reveals that Plaintiff was born on February 24, 1967, making him now 49 years and one month of age.  In light of the previous finding by the Commissioner that Plaintiff is limited to sedentary work, he will almost certainly be entitled to full disability benefits no later than his 50th birthday, February 24, 2017.  20 C.F.R. Pt. 404, Subpart P, App. 2, §§ 201(g), 201.12.  Further, it is well settled that the age categories should not be applied "mechanically in a borderline situation."  20 C.F.R. § 404.1563(b).  On remand, the Commissioner is directed to promptly address whether Plaintiff should be awarded disability benefits while his entitlement to back benefits is litigated.